UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,          CRIMINAL NO. 98-80695

             Plaintiff,          HON. GERALD ROSEN

-vs-

D-1 **FAWZI MUSTAPHA ASSI**,

             Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

On 29, 2007, defendant entered a guilty plea to Count One of the Indictment (Material Support to Designated Foreign Terrorist Organization, 18 U.S.C. § 2339B(a)(1)). As part of the plea agreement, the parties agreed that the court will decide whether or not U.S.S.G. § 3A1.4 (the terrorism guideline) should be used to determine defendant's offense level.

If that guideline is used for count one of the indictment, the sentence range is 210 – 262 months. Despite that guideline range, if applied, defendant's sentence cannot exceed 10 years, which was the statutory maximum for 18 U.S.C. § 2339B at the time of the commission of the offense. If §3A1.4 does not apply, his guideline range is 37 – 46 months.

## THE TERRORISM GUIDELINE

U.S.S.G. § 3A1.4 states, in pertinent part,

(a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.

(b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

The term, "federal crime of terrorism," is defined at 18 U.S.C. §2332b(g).

(5) the term "Federal crime of terrorism" means an offense that--
 (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;  and
 (B) is a violation of--
 (i) . .  ., 2339B (relating to providing material support to terrorist organizations);

Like all other guideline enhancements, the government must present evidence in support of the enhancement by a preponderance of evidence, not proof beyond a reasonable doubt. *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001). The court may consider hearsay evidence, so long as there is a "minimum indicia-of-reliability" *United States v. Moncivais*, 492 F.3d 652, 658 (6th Cir. 2007), which is a "relatively low hurdle." United *States v. Greene,* 71 F.3d 232, 235 (6th Cir.1995).

The term "government" in § 2332b(g)(5)(A), which defines federal crimes of terrorism is not limited to the government of the United States but applies to all governments. *United States v. DeAmaris*, 406 F.Supp.2d 748 (S.D. Texas 2005) (§ 3A1.4 applied to defendants who provided material support to an organization that opposed the government of Colombia). Nor is §3A1.4 limited to crimes involving a substantial risk of

injury. *United States v. Thurston,* 2007 WL 1500176, *12 (D.Or., May 21, 2007).

## FACTS

As a result of telephone calls intercepted pursuant to a FISA order, the F.B.I. in Detroit learned that defendant, an engineer for the Ford Motor Company in Dearborn, Michigan, was a procurement agent for Hizballah. They also learned that, in the summer of 1998, he was purchasing high tech equipment that he planned to transport to Lebanon. The intercepted phone calls disclosed that he would be flying out of Detroit on July 13, 1998.

On that date, as he boarded an airplane at Detroit Metro Airport on an international flight for Lebanon, he was approached by a Customs Inspector, to whom defendant showed his passport. Another Customs inspector searched defendant's bag and discovered two Boeing global positioning satellite modules. Defendant was asked additional questions by the agents. Among other things, defendant denied that there were any commercial goods in his luggage. Defendant and his luggage were then taken to the Customs office at the international terminal for further inspection. Agents found night goggle visions and a thermal imaging camera in his luggage.

Defendant was then questioned by S/A Michael Steinbach of Customs. After the interview, defendant was permitted to leave. He did not, however, return to the plane, but remained in the United States. Defendant was put under constant surveillance by the F.B.I.

On July 14 defendant was seen by F.B.I. surveillance units throwing several items

into a trash dumpster located behind a store. He then discarded more items into another trash dumpster. Agents recovered the discarded items, which included literature pertaining to military equipment, remote controlled aircraft, night vision devices, and various other type items. Also recovered were several receipts, books, bank statements, internet down loads of Israeli Government cabinet locations addresses, books on Israeli culture, articles pertaining to the effects of military napalm and several other personal documents. On July 17 the F.B.I. executed search warrants at five different locations. At one of the locations, the search team found additional night vision goggles.

Defendant was interviewed on July 17, 1998 in Gatlinburg, Tennessee, by F.B.I. agents Joseph Testani (New York) and Marcia Balicki (Detroit - retired). Defendant explained how he became involved in the procurement of the technical equipment. He told the agents that he was contacted by Hassan, whose last name was unknown to him. Hassan asked defendant whether he could obtain technical equipment, including aviation equipment, night goggle visions, global positioning satellite systems, thermal imaging infrared scopes, technical software and bullet proof vests. Defendant admitted that Hassan was purchasing the equipment for Hizballah.

Defendant told the agents that he had gone to Lebanon in 1996 and met with Hassan, who gave him a list of companies and telephone numbers for defendant's use in purchasing the equipment. Defendant admitted that in 1997 he began to supply Hassan with the equipment. Defendant acknowledged that he appreciated the risk involved in his procurement activities and that he knew that what he was doing was illegal; nevertheless,

he was willing to help Hizballah in its struggle to force the Israelis out of southern Lebanon.

Defendant discussed Hizballah's political standing and reputation. He told the agents that he felt Hizballah made mistakes early on by attacking innocent people, including Americans. He believed that Hizballah had matured and was representing the values of the people, similar to some of the religious/political groups in the U.S.

The Gatlinburg interview was followed up by a July 21 interview in the Hyatt Regency Hotel in Dearborn, Michigan. During that interview, defendant identified "Hassan" from a photograph. He again admitted that he knew Hassan was a member of Hizballah. Defendant corrected his previous statement by informing the agents that someone other than Hassan provided him with the names and numbers of the American companies from which he was to purchase the equipment. According to defendant, this other person was in charge of Hizballah's efforts to develop unmanned surveillance aircraft.

During this second interview, defendant again admitted that he knew of Hizballah's terrorist history. He was aware that of Hizballah's attacks outside of Lebanon that caused death and/or serious injuries to innocent people. He acknowledged the past kidnappings of Americans, bombings of buildings outside of Lebanon and attacks on non-military U.S. persons and property as terrorist attacks by Hizballah. Defendant went on to say that he believes that Hizballah no longer uses these types of tactics against innocent or third parties to achieve its goals. He said that he supported Hizballah's continued

efforts to force the Israeli army out of southern Lebanon.

## CONCLUSION

Defendant's procurement efforts for Hizballah, a designated foreign terrorist organization, and his purpose for doing so require the application §3A1.4.  The critical language is whether his conduct was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. §2332b(g)(5)(A).  The issue is not whether he felt that Hizballah was justified in its conduct.  The material that he had been providing was meant to advance the military objectives of Hizballah in their armed conflict with Israeli forces.  The sentencing of defendant should not be a forum for a discussion on international politics.

          Respectfully submitted,

          **STEPHEN J. MURPHY**
          United States Attorney

          s/ Robert P. Cares
          **ROBERT P. CARES** (P28888)
          Assistant United States Attorney
          211 W. Fort
          Detroit, MI 48226
          (313) 226-9736
          robert.cares@usdoj.gov

Dated: June 9, 2008

Certificate of Service

I hereby certify that, on June 9, 2008, I electronically filed the Government's Sentencing Memorandum with the Clerk of the Court using the Electronic Case Management System and that notification of such filing will automatically be sent electronically to

**James C. Thomas**
Buhl Building
535 Griswold St.
Suite 2400
Detroit, MI 48226

s/ Robert P. Cares
**ROBERT P. CARES** (P28888)
Assistant United States Attorney
211 W. Fort
Detroit, MI 48226
(313) 226-9736
robert.cares@usdoj.gov