UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                              Criminal No. 98-80695

vs.                                              HON. GERALD ROSEN

FAWZI ASSI,

       Defendant.
_____/

## DEFENDANT FAWZI ASSI'S SENTENCING MEMORANDUM

NOW COMES Defendant Fawzi Assi, by and through his attorney, James C. Thomas, of Counsel, Plunkett & Cooney, P.C., and files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining the type and length of sentence for Mr. Assi. In the present case, Mr. Assi submits that U.S.S.G. §3A1.4 should not apply, which would satisfy the requirements of 18 U.S.C. § 3584, *United States v. Booker,* 543 U.S. 220 (2005), *United States v. Gall*, 128 S. Ct. 586 (2008), and the directives set forth in 18 USC § 3553(a).

I. **INTRODUCTION**

In 1998 Defendant Assi was charged in an Indictment with one count of attempting to provide material support to designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1), one count of attempted unlawful export of defense articles, in violation of 22 U.S.C. § 2778, one count of attempted unlawful export of controlled article, in violation of 50 U.S.C. § 1705(b), and one count of failure to appear, in violation of 18 U.S.C. § 3146.

**II. THIS COURT SHOULD NOT APPLY THE "TERRORISM ENHANCEMENT" BECAUSE THE FACTS IN THIS CASE TO NOT RISE TO THE REQUIREMENTS OF U.S.S.G. § 3A1.4**

Prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), sentencing was based on the mandatory sentencing guidelines. Under the prior system, a defendant's only hope of a lesser sentence was a Guideline-based downward departure. *United States v. McBride*, 434 F.3d 470, 476 (6th Cir. 2006).

In the past few years, the U.S. Supreme Court has strengthened the discretion of district court judges in sentencing. In the wake of *Booker*, and its progeny, sentencing courts have been directed to consider the various sentencing factors of 18 USC §3553(a) rather than adhering to the "advisory" Guidelines. Federal judges have much more latitude to sentence defendants based on the particular circumstances of the case before them. In fact, a sentence outside the sentencing guidelines no longer carries a presumption of unreasonableness. *U.S. v. Gall*, 128 S.Ct. 586, 596-597 (2008).

A district court must impose a sentence sufficient, but not greater than necessary, to comply with. the purposes of 18 USC §3553(a)(2) which are retribution, deterrence, incapacitation and rehabilitation.. *United States v. Denardi*, 892 F.2d 269, 276 (3rd Cir. 1989).

In determining the length of a sentence, the court must the following 3553(a) factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed
>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>  (B) to afford adequate deterrence to criminal conduct;
>  (C) to protect the public from further crimes of the defendant; and
>  (D) to provide the defendant with needed education or vocational training, medical care, or other correctional

>     treatment.
> (3) the kinds of sentence available;
> (4) the kinds of sentence and the sentencing range;
> (5) any pertinent policy statement;
> (6) the need to avoid unwarranted sentencing disparities among defendants;
> (7) the need to provide restitution to any victims of the offense.

Imposition of the terrorist enhancement to Mr. Assi's sentence is inappropriate retribution, deterrence, incapacitation and rehabilitation pursuant to 18 USC §3553(a)(2).[1] U.S.S.G. § 3A1.4 provides:

> (a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.
> (b) In each such case, the defendant's criminal history category ... shall be Category VI.
> Federal crimes of terrorism are defined by statute.  Under 18 U.S.C. 2332b(g)(5):
> the term "Federal crime of terrorism" means an offense that --
> is calculated to influence the conduct of government by intimidation or coercion, or to retaliate against government conduct; and

the guideline goes on to list an extensive number of offenses that may be related to terrorism.  Of this list, the only crime that Mr. Assi is charged with is a violation of §2339B, which relates to providing material support to terrorist organizations.

In U.S. v. Arnaout, 282 F.Supp. 2D 838 (N.D. Ill., 2003).  The defendant in that case entered a guilty plea to a racketeering fraud conspiracy.  Mr. Arnaout ran a charity.  The government alleged that he used funds from the charity to help provide boots, uniforms, hand warmers, ambulances and cash to the Chechen military.    The presentence report recommended the terrorism enhancement to Mr. Arnaout, however U.S. District Court  Judge Conlon declined to apply the terrorism enhancement pursuant to §3A1.4.

---

1  As a result of the Rule 11 Plea Agreement, the defendant has essentially capped his exposure at 10 years.

### A. The Facts In the Case At Bar Do Not Support the Application of the Terrorism Enhancement

Simply, Mr. Assi's actions do not fit into a federal crime of terrorism as they are set forth in U.S.S.G. § 3A1.4.  First, there has been no showing that his actions were a calculated effort to influence the conduct of a government by intimidation or coercion.  Second, there has been no showing that Mr. Assi was acting in a way to retaliate against conduct by a government.

Although the Government would not like a recitation of foreign affairs, we believe we would be remiss by not establishing a framework for the political environment that Mr. Assi was living in.

Fawzi Assi is a Shiite Muslim.  He grew up in Lebanon during a persistent age of invasions by Israeli defense forces, the neighboring country to the south,  who have occupied his country since 1976.  As a child he witnessed the incineration of a Lebanese family from his village who had been crushed by a tank as the car they were in was simply rolled over.  Like most people who come to the United States, Mr. Assi deeply loves the country of his birth while cherishing his opportunity to be an American.  While he has significant family ties in Lebanon and has been there many times, Mr. Assi has never done any violent or aggressive act towards Israel or the United States.

Mr. Assi's involvement stems from decades of fighting between Israel and Lebanon.  Israel has occupied parts of Lebanon for more than 22 years.  In 1978, the United Nations Security Council adopted Resolution 425, which was ratified by 12 votes to 0 (the United States was one of the ratifying countries)[2].  Israel remained an occupying country in southern Lebanon until the year 2000, two years after Mr. Assi was arrested.   Obviously, this Honorable Court is

---

2  United Nations Resolution 425.  *See*
   http://domino.un.org/UNISPAL.NSF/5ba47a5c6cef541b802563e000493b8c/e25dae8e3ce54fb5852560e50079c708!OpenDocument

aware of the continuing tension between Israel and Lebanon.  Israel abruptly invaded Lebanon, literally devastating the country before withdrawing.

Hezbollah considers itself a resistance movement within Lebanon.  It is opposed to the occupation of Southern Lebanon by the Israeli Defense Force (IDF).  Throughout the occupation, Hizballah engaged mostly in border clashes with the IDF.  For the most part, it refrained "from attacking civilian targets."[3]  In fact, Hezbollah admitted that it participated in preventing 'forbidden' acts by Palestinian elements" during March-early April 2002.[4]

It is represented that Members of Hezbollah have limited the scope of their dispute with Israel.  In 1998, Shaykh Qassem offered the following: "Our connection to the issue [of Israel's occupation of southern Lebanon] is therefore limited to the defense of our land and people against the occupier."[5]

While it is acknowledged that they may have had a checkered past, Hezbollah has dramatically reinvented itself as a political party in Lebanon.  In 1992, Hezbollah ran in its first election and successfully had eight members of Parliament elected.  Due in large part to its transformation as a political party, Hezbollah politicians were  "widely regarded as hardworking and noncorrupt, Hizballah members of the Lebanese Parliament are also known for their sense of pragmatism and their cooperation with non-Shi'I Parliament members.  They are known not for their militancy, but rather for their principled defense of Lebanon's poor (Shi'I and non-Shi'I alike) and for their focus on economic and social policy."[6]  Id. At 16.

It may not be surprising, then, that most "Lebanese reject the view prevalent in much of

---

3   Clawson, Patrick and Eisenstadt, Michael, *The Last Arab-Israeli Battlefield?  Implications of an Israeli Withdrawal from Lebanon*, Washington D.C. © 2000 at xiv.
4   Sobelman, Daniel, *New Rules of the Game:  Israel and Hizbollah after the Withdrawal from Lebanon*, Tel Aviv, © 2004 at page 41.
5   *Id.* at 6.
6   *Id.* at 16.

the West that Hezbollah is a 'terrorist group'."[7] The Lebanese government's position is that Hezbollah "is a resistance organization and its activity in the Shab'a Farms sector is resistance to foreign occupation on Lebanese soil."[8] This, as was pointed out earlier, was consistent with the United State's position voted for by the U.S. and approved by the United Nations in Resolution 425.

To date, there has been no conclusive proof of Hezbollah having committed terrorist acts against the United States. It is acknowledged that the 1983 bombing of U.S. Marines barracks has been attributed to Hezbollah by some observers. However, Robert MacFarlane, former National Security Adviser under President Reagan reported in his book Special Trust, that "The CIA had tracked the source of the bombing to a Shia Muslim commando unit known as the Husayni Suicide Forces, led by Abu Haydar Musawi, a radical Shia Muslim who had broken away from the mainline Amal organization in 1982 and formed the radical Islamic Amal." In fact, President Reagan in his most recent memoirs concluded that it was Iran *(not Hezbollah) who had committed the act.

D. CONCLUSION

Fawzi Assi is did not perform acts which warrant a terrorist enhancement. He is a man with deep respect for the United States as well as the nation where he was born. At all relevant times in this matter, Israel was illegally occupying Lebanon. At all relevant times, the United States had advocated and voted against the Israeli occupation. However, Mr. Assi never engaged in violent activity towards Israel or the United States. The devices which were intercepted were not offensive weapons. He did not ship weapons to members of Hezbollah and was not involved in any conspiracies to harm civilians or military personnel. Mr. Assi has been torn from his

---

7  *Id.* at 59.
8  *Id.* at 60.

family for years and looks forward to being able to put his life back together. Since his time in jail, Israel has left southern Lebanon.

Mr. Assi requests that this Honorable Court craft a sentence consistent with 18 USC 3553, Booker and its progeny cases and provide the defendant with the relief requested.

                                                Respectfully submitted.

                                                PLUNKETT COONEY

                                                By: /s/ James C. Thomas
                                                      James C. Thomas  P13801
                                                      Attorney for Defendant
                                                      2632 Buhl Building
                                                      535 Griswold Street
                                                      Detroit, MI 48226
                                                      313-963-2420
                                                      JThomas@plunkettcooney.com

DATED:  June 19, 2008

<u>PROOF OF SERVICE</u>

      I hereby certify that on June 19, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification such filing to all parties of record.

                                    <u>/s/ James C. Thomas</u>
                                      James C. Thomas