UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                  Plaintiff,

-vs-

D-1 FAWZI ASSI,

                  Defendant.

_____/

Criminal Case No. 98-80695
Civil No. 12-15493

HON. GERALD ROSEN

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO VACATE CONVICTION AND ACCOMPANYING BRIEF

Although the petitioner, Fawzi Assi, has demonstrated in court and in the various documents that he has filed that he is intelligent, his petition, like many *pro se* pleadings drafted by persons without legal backgrounds, lacks analytical structure and coherence. Consequently, it is difficult to effectively respond to the issues in the manner in which they are presented in the petition. Therefore, this response will cover the issues presented, but not in the same manner or sequence as set forth in the petition.

### 18 U.S.C. § 2255

28 U.S.C. § 2255 permits a prisoner sentenced by a federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Such

motions, however, must demonstrate "the existence of a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure" in order for relief to be obtained. *United States v. Todaro* , 982 F.2d 1025, 1030 (6th Cir. 1993) (citing *Hill v. United States,* 368 U.S. 424, 428 (1962)).

A prisoner is not automatically entitled to an evidentiary hearing. "[A]n evidentiary hearing is required unless the record conclusively shows that the defendant is entitled to no relief.  Stated another way, no hearing is required if the defendant's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

**<u>Procedural History</u>**

On August 4, 1998, a federal grand jury returned an indictment against  Assi, charging him with the attempting to provide material support to a designated terrorist organization in count one, which states:

> On or about July 13, 1998, in the Eastern District of Michigan, Southern Division, FAWZI MUSTAPHA ASSI did knowingly attempt to provide material support or resources, specifically: night vision goggles, global positioning satellite modules and a thermal imaging camera to Hizballah, which has been designated as a foreign terrorist organization by the Secretary of State pursuant to section 219 of the Immigration and Nationality Act.
>
> In violation of Title 18, United States Code, Section 2339B(a)(1).

He was also charged with attempting  to export defense article without license or

-2-

written approval (22 U.S.C. § 2778, 22 C.F.R. 127.1); attempt to export article without license or written approval (50 U.S.C. §1705, 15 C.F.R. 774), and failure to appear, 18 U.S.C. § 3146. (R. 10).[1]  Assi  pleaded guilty to count one of the indictment on November 29, 2007.[2]  The plea agreement (R. 140) contemplated that, prior to sentencing, the District Court would decide whether the terrorism enhancement of the sentencing guidelines, USSG § 3A1.4, should apply.

The District Court held an evidentiary hearing on June 23, 2008, and then issued a written findings of fact and conclusions of law regarding applicability of § 3A1.4 of the U.S. Sentencing Guideline and ruled that the §3A1.4 enhancement was applicable.  (R. 153)[3].  On December 12, 2008, Assi was sentenced to term of imprisonment of 120 months  and supervised release for a term of two years.  Assi filed a timely notice of appeal.

On appeal to the Sixth Circuit Court of Appeals, Assi raised the following issues:

I:  The district court's legal conclusion that §3A1.4 applied to defendant's facts should be reversed because its application leads to absurd results, runs contrary to congressional intent, defies common moral sense and Ignores a statutory ambiguity.

---

[1]References to documents and other docket entries will be indicated by R. [docket number].

[2]The significant delay between the charge and the ultimate guilty plea is attributed, in great part, to Assi who fled the United States to Lebanon after he was initially arrested in 1998. He was a fugitive for approximately six years.  Additionally, the case was protracted because Assi used five separate attorneys (not including appellate counsel) at various times during the pendency of this case.

[3]*United States v. Assi*, 586 F.Supp.2d 841 (E.D. Mich. 2008)

A. The legislative history establishes that congress intended the §3A1 .4 enhancement to apply to acts of violence in violation of the criminal laws of the United States.
1. Creation and evolution of §3A1.4
2. HR 104-896 and S 104-390

B. The word "government" in 18 USC §2332b(g)(5) cannot be logically interpreted to include the State of Israel and should not be interpreted to include the State of Israel in this case, where Israel's army invaded the territorial Integrity of Lebanon in violation of international laws and occupied Lebanese territory in continued violation of International law.

II. The facts in defendant's case do not support the legal application of the terrorism enhancement.

III. The district court was obliged to consider international sources of law, which are binding on the United States, in determining the applicability of §3A1.4 to defendant.
A. Terrorism
B. Right of self-defense under international law
C. International treaties are American law
D. Lack of jurisdiction
E. Act of state doctrine
F. The international comity doctrine

(Appellant's Brief p. 2)

## Conviction by Guilty Plea

Assi's challenge to the validity of his conviction by guilty plea appears to be based primarily on his mistaken notion that there was no factual basis to support the *scienter* element if 18 U.S.C. § 2339B. This contention flies in the face of the factual record and the *scienter* element of the statute. In *Holder v. Humanitarian Law Project*, ⸺ U.S. ⸺, 130 S.Ct. 2705 (2010), the plaintiffs argued that, when using the 18 U.S.C. 2339B to punish prohibited speech, there must be proof that the defendant intended to further the

illegal activities of the terrorist organization.  Rejecting that argument, the Supreme Court

stated:

> "To violate this paragraph, a person must have knowledge that the organiza-
> tion is a designated terrorist organization ..., that the organization has
> engaged or engages in terrorist activity ..., or that the organization has
> engaged or engages in terrorism...." [18 U.S.C. 2339B(a)(1)].  Congress
> plainly spoke to the necessary mental state for a violation of § 2339B, and it
> chose knowledge about the organization's connection to terrorism, not
> specific intent to further the organization's terrorist activities.

*Id.* at 2717.

To be sure, the Supreme Court quoted from the statute which was amended in

2004 to include the definition of *scienter*.  However, this amendment did not alter the

*mens rea* requirement of the statute; it was a manifestation of the congressional rejection

of an attempt a court to add an additional intent requirement. *See United States v.*

*Al-Arian*, 329 F.Supp. 2d 1294, 1299-1300, 1303-05 ( M.D.Fla. 2004)

> "IRTPA [Intelligence Reform and Terrorism Prevention Act of 2004]
> clearly adopted the Ninth Circuit's decision in  *Humanitarian Law Project*
> *v. United States Dept. of Justice*, 352 F.3d 382, 386 (9th Cir.2003), which
> held that § 2339B requires that a defendant know either that the organiza-
> tion is an FTO, or that the organization engaged in terrorist activities. 352
> F.3d at 400.  At the time there was a different decision, *United States v.*
> *Al-Arian*, 329 F.Supp. 2d 1294, 1299-1300, 1303-05 ( M.D.Fla. 2004),
> which had construed § 2339B as requiring a specific intent to further an
> organization's terrorist activities. By passing IRTPA Congress implicitly
> rejected that district court's construction of § 2339B.

*United States v. Taleb-Jedi*  566 F.Supp.2d 157, 175,  n. 17 (E.D. N.Y. 2008)

In challenging the constitutionality of the statute in a pretrial motion in this case,

Assi asserted that the statute, to be constitutional, would have to have a requirement that

the government prove that the defendant had the specific intent to further the unlawful aims of the designated terrorist organization.  In response to the constitutional challenge, this court stated:

> The Court does not read *Scales* and its progeny as mandating that § 2339B must incorporate the specific intent requirement propounded by Defendant in order to withstand a Fifth Amendment due process challenge. Such a heightened showing of *mens rea* was deemed necessary in *Scales* because the statutory provision at issue otherwise could have been read as prohibiting mere association with, or passive membership in, an organization that pursued illegal objectives.  As explained earlier, and as other courts have observed, § 2339B is not such a statute-rather, it criminalizes the affirmative conduct of providing material support or resources to an organization designated as an FTO.

*United States v. Assi*, 414 F.Supp.2d 707, 721 (E.D.Mich.2006).

Assi may not resurrect this untenable claim under the cloak of a *habeas* petition.  It was never raised on direct appeal and is, therefore, forfeited. "[C]laims not raised on direct appeal may not be raised on collateral review."  *Massaro v. United States*, 123 S. Ct. 1690, 1693 (2003).

The record in this case demonstrates that Assi was fully informed of the *men rea* requirement; furthermore, sufficient evidence, including his own admissions, was presented to firmly establish his knowledge.  Defendant entered a guilty plea to count one pursuant to written plea agreement, which he signed.  (R. 140) The written agreement clearly set forth the elements of 18 U.S.C. 2339B.

### B. Elements of Offenses

The elements of Count One are:

>   (1)   Defendant knowingly attempted to provide material support or resources;
>   (2)   To Hizballah, a designated foreign terrorist organization, and;
>   (3)   At the time, defendant knew that Hizballah was a designated foreign terrorist organization or that Hizballah has engaged in terrorist activity.

Assi was also verbally advised of these elements when he entered his guilty plea.   (Plea transcript, 11/27/07 p. 18-19).

In providing the factual basis for the guilty plea, defendant admitted knowing that Hizballah had engaged in acts of terrorism.

>   THE DEFENDANT:  On July 13th '98, I was boarding an airplane going to Lebanon and
>
>   THE COURT: Was that here in Detroit?
>
>   THE DEFENDANT: Yes, in Detroit. I was stopped. In my possession I had two global positioning modules, night vision goggles and thermal imaging camera. These items were going to a person in Lebanon who was purchasing those items to Hizballah who was designated as a foreign terrorist organization at the time.
>
>   THE COURT: Did you know at the time that what you were doing was illegal?
>
>   THE DEFENDANT: I know it was sending these items to Hizballah, Your Honor.
>
>   THE COURT: Okay. Was illegal?
>
>   THE DEFENDANT: I knew it was wrong.
>
>   THE COURT: Did you know Hizballah was either at the time a designated foreign terrorist organization or had engaged in acts of terrorism?
>
>   THE DEFENDANT: Presumably yes, Your Honor.

THE COURT: Any further questions from the government concerning the element of the crime Mr. Assi has plead guilty to?

\*                    \*                    \*

THE COURT: Mr. Cares?

MR. CARES: Your Honor, the defendant in response to the Court's question about knowing whether Hizballah was a designated terrorist – foreign terrorist organization said presumably.

THE DEFENDANT: Allegedly.

THE COURT: Or had committed acts of terrorism.

MR. CARES: And he used the word "presumably" I, frankly, think that's equivocal, Your Honor. I'd ask him to clarify that.

THE COURT: Let's break the question down. Did you know Hizballah had been designated as a foreign terrorist organization?

THE DEFENDANT: I'm sorry?

THE COURT: Did you know Hizballah had been designated as a foreign terrorist organization?

THE DEFENDANT: At the time, no, Your Honor.

THE COURT: Did you know that Hizballah had engaged in what had been referred to as terrorist activities?

THE DEFENDANT: I read about it. Yes, Your Honor.

THE COURT: Mr. Cares?

MR. CARES: If he had read about it then he knew. That would be satisfactory, Your Honor.

THE COURT: All right. All right.

(Plea Transcript 11/27/07 p. 37- 40)

Assi also acknowledged his knowledge in the plea agreement which he signed;

-8-

### C. **Factual Basis for Guilty Pleas**

The following facts are a sufficient and accurate basis for defendant's guilty pleas:

On July 13, 1998, defendant boarded an airplane at Detroit Metro Airport on an international flight for Lebanon. At the time he had in his possession two Boeing global positioning satellite modules. He also had night vision goggles and a thermal imaging camera in his luggage. Defendant was attempting to deliver these items to a person in Lebanon. Defendant knew that the person to whom he was delivering the equipment was purchasing the equipment for Hizballah, which was, at the time, a designated foreign terrorist organization. He knew that what he was doing was illegal. At the time defendant attempted to deliver the items, he knew that Hizballah was a designated foreign terrorist organization.

Furthermore, the plea agreement also contained the following waiver:

### 7. **Right to Appeal**

If the sentence imposed does not exceed the maximum allowed by Part 3 of this agreement, defendant waives any right he has to appeal his conviction or sentence. If the sentence imposed is within the guideline range determined by the attached worksheets (other than the determination of § 3A1.4) the government agrees not to appeal the sentence, but retains its right to appeal any sentence below that range.[4]

Because Assi did not raise the validity of the guilty plea on direct appeal, he has

insurmountable hurdles to cross to be able to make a constitutional challenge to his plea

through the use of the *habeas* process.  Assi must show cause and prejudice to excuse his

failure to seek appellate review of his guilty plea on direct appeal.  See *United States v.*

---

[4]In Part 3 of the agreement, the parties agreed that the sentence would not exceed 120 months.  Defendant did receive consideration for his guilty plea.  If he had been convicted of all the offenses, and the court agreed that § 3A4.1 applied, the sentences would have run consecutively,  and the guideline range would have been 235-293 months.  Thus, the defendant reaped a substantial benefit from the agreement.

*Frady*, 456 U.S. 152, 170 (1982).  He has not done so.

*Bousley  v. United States*, 523 U.S. 614 (1998)  addressed the very limited scope of review in these types of cases.   The Court stated that attacks on guilty pleas are "strictly limited."  *Id*. at 621.  This is especially true when, as in this case, the validity of the plea had not been raised on direct appeal, even if there had been a basis for challenging the voluntariness and intelligence of a guilty plea.  "Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'  Indeed, 'the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.'"  *Id.*  (internal citations omitted.)

In *Hasse v. United States*, 800 F.2d 123 (7th Cir. 1986), the defendant had entered a guilty plea to two counts of knowingly making false statements for the purpose of influencing a federally insured financial institution, 18 U.S.C. § 1014.  When the defendant entered the guilty plea, he was not asked whether he knowingly made a false statement.  A short time later, after receiving a one year prison sentence, the defendant filed a § 2255 motion in an effort to have his plea set aside because he had not acknowledged the requisite *scienter*.  The District Court, acknowledging that the plea process was flawed, denied the motion. The 7th Circuit found that the plea was not constitutionally defective but rejected the defendant's efforts to have it set aside.  The court noted that if the plea based conviction were challenged on direct appeal "there would be potentially fatal flaws in the taking of the plea."  *Id.* At 126.  Assi's plea was not defective.  Even if there had been some flaw similar to the one in *Hasse*, Assi would not be entitled to have

his plea set aside on constitutional grounds.

Assi's only hope of opening the door to a challenge of his conviction on constitutional grounds would arise if he could somehow can demonstrate "actual innocence." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Assi has not come close to meeting his burden. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623. The government is not limited to the guilty plea in rebutting any evidence of innocence (which does not exist in this case). Not only did Assi acknowledge that he had the requisite guilty knowledge when he pled guilty, but this element was further proved when he was interviewed by F.B.I. agents in 1996. At the sentencing hearing held on June 23, 2008 FBI S/A Joseph Testani testified about his interviews with Assi in 1998 before he was arrested. These included admissions by Assi regarding his knowledge of Hizballah.

> Q: Okay. Did Mr. Assi talk to you -- tell you why he was doing this, in his mind, for Hassan?
>
> A: Yes, he did.
>
> Q: What did he tell you?
>
> A: He felt obligated to help Hassan based on the struggle of the Lebanese people and also Hassan's status within Hizballah.
>
> Q: Going back to Hizballah. Did you have further discussions with Mr. Assi about Hizballah's history up to that point?
>
> A: Yes, I did.
>
> Q: What did he tell you?

A:  He -- we had talked about Hizballah's struggle and how they occasionally had attacked America or American interests and how they'd also attacked civilian targets outside of Lebanon.

Q:  And what did Mr. Assi say about that?

A:  He disagreed with that.  He thought that it was wrong that Hizballah had done that, but he thought that they had changed their tactics, were getting away from attacking civilian targets.

\*                    \*                    \*

THE COURT:      Could you be a little more definitive in terms of what he said.

THE WITNESS:   Your Honor, we had discussed the attacks against American interests. He thought that that was wrong and that Hizballah had made some mistakes in doing that.  And we also discussed, I believe, some attacks on civilian targets in South America. He thought that was wrong.

THE COURT:   So he thought it was wrong both to attack American interests and to attack civilian targets?

THE WITNESS:   I believe he said that Hizballah had made mistakes by doing that.

\*                    \*                    \*

Q:  At the end of the interview, was there a more detailed interview dealing with some specific incidents?

A:  With Hassan, yes.

Q:  I'm talking about with Hizballah.

A:  It occurred throughout the interview, Mr. Cares.

Q:  Okay. Did you talk with Mr. Assi about certain specific episodes, terrorism acts, if you will, alleged to have been committed by Hizballah?

A:  Yes.

-12-

Q:  And would you tell the Court about that.

A:  We discussed the attacks that occurred against American interests by Hizballah to include the 1983 Marine Corps barracks attack, the U.S. Embassy attacks, some of the kidnappings.

MR. THOMAS:  Your Honor, just so we have relevance, can we have the dates of these alleged attacks?

THE WITNESS:  I don't have all the dates.  Marine Corps barracks was 1983, the U.S. Embassy was in '83. The kidnappings occurred throughout the '80's.

BY MR. CARES:

Q:  Who was it that brought up these specific episodes or these specific alleged terrorists acts, you or Mr. Assi?

A:  I did.

Q:  How did that come about?

A:  I was asking Mr. Assi -- after we had confirmed he had procured these items in giving them to Hizballah, knowing that they were going to Hizballah, I tried to discern what his feelings were on the group and some of the attacks they had a committed.  We were talking about those attacks.

Q:  And did you try to develop a rapport with Mr. Assi, specifically as it relates to Hizballah?

A:  Yes.

Q:  How did you do that?

A:  We told him I could understand there's a struggle to have Israelis out of his country.

Q:  That lead on to anything else?

A:  Led on to his general statement that that's what he wanted, also.  He wanted the Israelis out.  He supported Hizballah's fight against the Israelis.  By providing these items, he thought he was helping Hizballah succeed in that goal.

-13-

Q:  What, if anything, did Mr. Assi say when you started talking about specific incidents?

A:  Again, he thought that these were mistakes made by Hizballah early on and that they had become more of a political organization.

(Sentencing Hearing 6/23/08, p. 32-38)

Even though, during this 1998 interview with federal agents, Assi tried to distance himself from the highly publicized Hiszballah terrorist events, he did admit his knowledge of the history of some of Hizballah's infamous acts of terrorism.[5]  Assi has presented nothing to the court that justifies a finding of "actual innocence" – the only mechanism that would open the door for a constitutional challenge to his plea-based conviction

**Petitioner's Attempt to Set Aside His Sentence**

Apparently Assi also contends that his sentence should be voided because of the District Courts determination that U.S.S.G. 3A4.1 applied. (Motion to Vacate, p. 14-19). His direct appeal focused entirely on his sentence.  It was affirmed by the Sixth Circuit Court of Appeals, *United States v. Assi*, 428 Fed. Appx. 570, 2011 WL 2580392 (C.A.6 (Mich.).  Dealing with that issue again at this stage is unwarranted.  Defendant's sentence did not exceed the maximum sentence for the crime to which he pled guilty, was constitutional, and within the jurisdiction of the court.

In *United States v. Knight*, 37 F.3d 769 (1st Cir. 1994), the defendant, attempted to

_____

[5]Assi's purported criticism of the more notorious episodes of Hizballah's terrorism in no way absolves him from guilt. As noted in  *Holder v. Humanitarian Law Project*, 130 S.Ct. 2705, 2725 (2010),  " 'Terrorist organizations do not maintain organizational 'firewalls' that would prevent or deter ... sharing and commingling of support and benefits.' McKune Affidavit, App. 135, ¶ 11."

-14-

use 28 U.S.C. § 2255 to challenge the application of the sentencing guidelines.  His

challenge was rejected.  As stated by the Court, "Neither of [defendant's] present claims

alleges a constitutional error or lack of jurisdiction. Thus, the claims can only be properly

brought under § 2255 if they allege that the sentence "was in excess of the maximum

authorized by law," "was imposed in violation of the ... laws of the United States," or "is

otherwise subject to collateral attack." Id. at 772.  Likewise, the Court, in *United States v.*

*Santiago*, 993 F.2d 504 (5th Cir. 1993),  refused to consider the defendant's § 2255

motion that dealt with the application of the sentencing guidelines regarding his role in

the offense because it was raised and disposed of on direct appeal.

In this case, both the District Court and the Sixth Circuit Court of Appeals dealt

with this issue thoroughly.  Revisiting the sentencing by means on this collateral review is

totally unjustified.

## **International Law**

As he did in his direct appeal, Assi tries to inject international law in his efforts to

seek to have his conviction or sentence vacated.  The Sixth Circuit Court of Appeals held

that the provisions of international law and policy are not relevant to the crime of

providing material support to a designated terrorist organization;

> Appellant argues that, before determining that his actions promoted a
> federal crime of terrorism, the district court should have considered whether
> Appellant's assistance to Hizballah was justified under International Law.
> Appellant relies on three International Law doctrines: (1) the right to
> self-defense pursuant to Article 51 of the United Nations Charter; (2) the
> Act of State Doctrine; and (3) the principle of comity.
> *          *          *

-15-

We find that the international laws that Appellant cites are not relevant to this case, as all of the treaties and doctrines cited apply to states, not individuals. Appellant attempts to rely on the right to self-defense enshrined in Article 51 of the United Nations Charter. It is beyond dispute that Article 51's right to self-defense does not apply to an individual, but instead applies to states, or in limited circumstances, to self-determination movements that take on the legal obligations of states. U.N. Charter, Arts. 4, 51, 110; Legal Consequences of the Construction of a Wall in the Occupied Palestinian Territory, Advisory Op., 2004 I.C.J. 136, ¶ 139 (Jun. 9) ("Article 51 of the Charter thus recognizes the existence of an inherent right of self-defence in the case of armed attack by one State against another State.").

Appellant also argues that the Act of State Doctrine and the "international comity doctrine" prevented the district court from applying the Terrorism Enhancement. The Act of State Doctrine does not apply, as it bars only a United States federal court from judging the legality of an action taken by a foreign state within its territory.

\*                \*                \*

The doctrine of comity, which is comprised of nonbinding practices that states adopt out of courtesy, is also inapplicable to this case.

*United States v. Assi,* 428 Fed.Appx. 570, at 577, 2011 WL 2580392 (C.A.6 (Mich.)).

Assi has offered no authority or reasonable argument to justify reconsideration of this issue.

## 18 U.S.C. § 2339b Is Not Void for Vagueness

Assi's attempts to have his guilty plea set aside is based, in part, on an argument that the statute is unconstitutionally vague.  Defendant had filed a pretrial motion to dismiss the indictment and contended that 18 U.S.C. §2339B was void for vagueness.  (R. 46).  This court denied the motion (R. 72), finding that, as applied to the specific conduct in this case, there was no constitutional infirmity.

Defendant's real objection, at bottom, is that the statute is overly "vague" in a more generalized sense, potentially reaching conduct that cannot plausibly be viewed as advancing the unlawful objectives of an FTO. As the Sixth

Circuit has explained, such complaints that a statute is "overly broad" or "brings too much protected activity within its purview" do not suffice to establish that the enactment is "constitutionally deficient on vagueness grounds." *American-Arab Anti-Discrimination Committee v. City of Dearborn*, 418 F.3d 600, 609 (6th Cir.2005). Because the statute is sufficiently specific concerning the sort of conduct set forth in the indictment in this case, it simply does not matter, for present purposes, whether § 2339B threatens to reach other, perhaps more humanitarian forms of assistance. Nor is it necessary, for purposes of resolving Defendant's vagueness challenge, for the Court to consider whether Congress could properly prohibit even wholly "benign" contributions of material support or resources to organizations designated as FTOs. Rather, the Court holds only that the statute neither reaches a substantial amount of constitutionally protected conduct nor is impermissibly vague as applied here.

*United States v. Assi*, 414 F.Supp.2d 707, 719 (E.D. Mich. 2006)

This issue was not raised on direct appeal.  Therefore, Assi is barred from raising it now.  Morever, the United States Supreme Court held in *Holder v. Humanitarian Law Project*, —— U.S. ——, 130 S.Ct. 2705 (2010) held that s2339B was not void for vagueness as applied to the support at issue in that case: monetary contributions, other tangible aid, legal training, and political advocacy. which were meant to support humanitarian and political activities of  two designated foreign terrorist organizations.  It follows that the material that Assi intended to provide to Hizballah –  night vision goggles, global positioning satellite modules and a thermal imaging camera – even more squarely fell within the unambiguous ambit of the statute.

## **Recusal**

Alleging prejudice on the part of Judge Rosen, Assi seeks to have his conviction set aside and to have Judge Rosen recuse himself from ruling on the § 2255 petition.  Assi

bases his argument on 28 U.S.C. § 455 which states in pertinent part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

Assi's attack on the impartiality of Judge Rosen is based solely on ethnicity. As stated in the petition, "Despite Defendant's demands for a presiding officer who was not Jewish, this obvious conflict of interest and clear basis for a presumption of partiality was ignored by the presiding trier of fact who refused to recuse himself when, in fact, **his people** were illegally inside Defendant's country and were at war with Defendant's people." (Motion to Vacate, p. 2) (Emphasis added). Judge Rosen's "people" were, and are, the people of the United States. Ever federal judge in the United States is sworn to uphold the Constitution of the United States and its laws. [6]

Assi should consider carefully the statements made by Judge Damon Keith in the case of *Baker v. City of Detroit*, 458 F.Supp. 374 (E.D. Mich. 1978), a case brought by white police officers who alleged that they were passed over for promotion because of their race. The plaintiffs moved to recuse Judge Keith, who denied the motion, and made the following observation:

---

[6]Following Assi's logic, the government should move to recuse any judge whose ancestors were Lebanese if this case were reassigned to that judge. Such a motion by the United States would be unconscionable.

The essence of plaintiffs' not-so-subtle argument in support of my disqualification from this case, if carried to its logical conclusion, would require my disqualification from all cases involving the City of Detroit as well as all cases involving affirmative action programs.  If this were the case, no Black judge who happens to be acquainted with Black officials nominally named in law suits could preside over cases such as the instant case.  Indeed, white judges likewise would be subject to disqualification in suits challenging affirmative action programs in situations similar to those present here, where a white judge is acquainted with a white mayor nominally named as a defendant in a civil rights suit brought by black plaintiffs. See generally, *Blank v. Sullivan & Cromwell*, 418 F.Supp. 1 (S.D.N.Y.1975); *Commonwealth v. Local Union* 542, 388 F.Supp. 155, 162-81 (E.D.Pa.1974).

This country has come a very long way in race relations. It would certainly be a sad state of affairs were the federal judiciary now to find itself in a position which subjects it to what can only be referred to as racial judge shopping.

*Id.* at 378.

In the instant case Judge Rosen accommodated Assi to a much greater degree than typically warranted for a criminal defendant.  He allowed the defendant to protract the case by numerous changes in trial counsel.  He allowed the defendant to file *pro see* motions even though Assi was represented by counsel.  The defendant can cite to no ruling or conduct on the part of Judge Rosen that demonstrates a hint of prejudice.

Assi's attempt to recuse Judge Rosen from consideration of his § 2255 motion should be denied.  The decision whether or not the trial judge should be recused is committed to the discretion of the trial judge himself or herself.  *Fharmacy Records v. Nassar,* 572 F.Supp.2d 869 (E.D.Mich. 2008).  Recusal is warranted if "a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir.1999) (quoting *Hughes*

-19-

*v. United States*, 899 F.2d 1495, 1501 (6th Cir.1990).  Merely ruling against a party does not justify recusal.   *Fharmacy Records v. Nassar,* 572 F.Supp.2d at 876.   "In making its determination, a court must remember that 'where the standards governing disqualifica-tion have not been met, disqualification is not optional; rather, it is prohibited.' " *Id.* (quoting  *In re Aguinda,* 241 F.3d 194, 201 (2d Cir.2001).

Although there was a guilty plea in this case, it was preceded by extensive pre-trial litigation.  Morever, the sentencing was based on a hearing in which testimony was taken and briefs were filed.  Judge Rosen presided over the guilty plea and imposed sentence. He  handled those matters in a thorough and fair manner and is best suited to rule on the 2255 motion.  Attempts to have him removed have no merit and cannot be reconciled with any consideration of the ends of justice.  Assi's "allegations of judicial bias in this case are feckless and irresponsible." *Fharmacy Records v. Nassar,* 572 F.Supp.2d at 876, and should be summarily rejected.

## CONCLUSION

Assi's motion to vacate his conviction or modify his sentence should be denied.

Respectfully submitted,

**BARBARA MCQUADE**
United States Attorney

s/ Robert P. Cares
**ROBERT P. CARES** (P28888)
Assistant United States Attorney
211 W. Fort
Detroit, MI 48226
(313) 226-9736
robert.cares@usdoj.gov

Dated: January 28, 2013

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that service of the foregoing Government's Response to

Defendant's Motion to Vacate Conviction and Accompanying Brief, will be made upon

Fawzi Assi on January 29, 2013 by placing same in a stamped envelope and depositing

said envelope in the United States mail addressed as follows:

> Fawzi Assi
> CCM Detroit
> Community Corrections Office
> 4026 E. Arkona Rd.
> Milan, Mi  48160

> s/_____
> Robert Cares
> Assistant United States Attorney
> United States Attorney's Office