UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAWZI MUSTAPHA ASSI,

    Petitioner,                                      Civil Case No. 12-15493
                                                    Criminal Case No. 98-80695
v.                                                       Hon. Gerald E. Rosen

UNITED STATES OF AMERICA,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE HIS CONVICTION AND SENTENCE**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on         June 12, 2015        

PRESENT:  Honorable Gerald E. Rosen
                     Chief Judge, United States District Court

## I. INTRODUCTION

On November 29, 2007, Petitioner Fawzi Mustapha Assi entered a plea of guilty to count one of the indictment in this case, in which Petitioner was charged with attempting to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B(a)(1). In accordance with the plea agreement entered into by the parties under Fed. R. Crim. P. 11, the remaining three counts of the indictment were dismissed. The parties further agreed that in determining Petitioner's sentence, the Court would decide whether to apply § 3A1.4 of the U.S. Sentencing Guidelines, which calls for a sentencing enhancement if the offense of conviction "is a felony that involved, or was intended to

promote, a federal crime of terrorism."

Following an evidentiary hearing on June 23, 2008, the Court held in an October 17, 2008 opinion and order that § 3A1.4 was applicable in determining Petitioner's sentencing range under the Sentencing Guidelines. *See United States v. Assi,* 586 F. Supp.2d 841 (E.D. Mich. 2008). As a result, the Guidelines called for an advisory sentencing range of 235 to 293 months, but this "range" was reduced to 120 months — the statutory maximum sentence for a violation of 18 U.S.C. § 2339B(a)(1) at the time Petitioner committed his offense — by operation of § 5G1.1(a) of the Guidelines.[1] On December 12, 2008, the Court sentenced Petitioner to a 120-month term of imprisonment and two years of supervised release, and the Sixth Circuit Court of Appeals affirmed Petitioner's sentence on direct appeal, rejecting his various challenges to this Court's application of the § 3A1.4 sentencing enhancement. *See United States v. Assi,* No. 09-1021, 428 F. App'x 570 (6th Cir. June 30, 2011).

Through the present *pro se* motion brought under 28 U.S.C. § 2255, Petitioner challenges his conviction and sentence on a variety of grounds. The Government has filed a response in opposition to this motion, arguing that Petitioner's various attacks on his conviction and sentence are defeated by a combination of procedural default, the "law of the case" doctrine, and an absence of factual and/or legal support. As discussed below, the Court agrees with the Government that Petitioner's motion must be denied in its

---

[1] Petitioner's Rule 11 plea agreement likewise provided that his sentence would not exceed 120 months.

entirety.

## II. ANALYSIS

As noted by the Government, Petitioner's *pro se* motion is somewhat unclear in its delineation and presentation of the issues Petitioner wishes to pursue.  Nonetheless, the Court reads Petitioner's motion as advancing the following challenges to his conviction and sentence:  (i) that his guilty plea failed to provide factual support for the scienter element of the offense defined by 18 U.S.C. § 2339B(a)(1), (ii) that § 2339B is void for vagueness, (iii) that the Court erred in applying the § 3A1.4 enhancement to determine Petitioner's sentencing range under the Sentencing Guidelines, and (iv) that the undersigned judicial officer was obligated to recuse himself from presiding over this case or deciding the present motion because of his Jewish religious affiliation.  The Court addresses each of these issues in turn.

**A.     Petitioner's Challenge to the Scienter Element of His Guilty Plea Is Procedurally Defaulted and Lacking in Merit.**

As the first issue advanced in his present motion, Petitioner contends that his plea of guilty to count one of the indictment is invalid for lack of a factual basis to support the scienter element of the § 2339B offense to which he pled guilty.  Yet, because Petitioner failed to raise this challenge to his guilty plea on direct appeal, the Court finds that this claim has been procedurally defaulted.  In addition, Petitioner has failed to make a showing of actual innocence that would overcome this procedural default.

The Supreme Court has "strictly limited the circumstances under which a guilty

plea may be attacked on collateral review." *Bousley v. United States,* 523 U.S. 614, 621, 118 S. Ct. 1604, 1610 (1998). In particular, because "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal," the Supreme Court has emphasized that "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley,* 523 U.S. at 621, 118 S. Ct. at 1610 (internal quotation marks and citations omitted); *see also Waucaush v. United States,* 380 F.3d 251, 254 (6th Cir. 2004). Applying this principle here, Petitioner's failure to challenge his guilty plea on direct appeal means that he has procedurally defaulted his present claim that this plea lacked a factual basis. *See Bousley,* 523 U.S. at 621, 118 S. Ct. at 1610; *Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011).

In light of this procedural default, Petitioner may pursue his present challenge to his guilty plea only by demonstrating either (i) cause for his default and prejudice that would result from the failure to consider this challenge, or (ii) that he is actually innocent of the § 2339B offense to which he pled guilty. *See Bousley,* 523 U.S. at 622, 118 S. Ct. at 1611; *Waucaush,* 380 F.3d at 254. Petitioner makes no effort in his motion to establish cause and prejudice,[2] but instead endeavors to demonstrate his actual innocence of violating § 2339B(a)(1). Specifically, he points to the same purported factual

---

[2] As Petitioner recognizes, (*see* Petitioner's § 2255 Motion at 5), a showing of cause for a procedural default most frequently rests upon a claim of ineffective assistance of counsel or an intervening change in the law. Here, however, Petitioner does not contend that his appellate counsel provided ineffective representation by failing to challenge his guilty plea on direct appeal, nor does he point to any new developments in the law governing § 2339B offenses.

4

insufficiency that underlies his substantive challenge to his guilty plea, arguing that the record fails to establish the element of scienter that is necessary to find him guilty of a § 2339B offense.

The Supreme Court has explained that an "actual innocence" inquiry focuses on "factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S. at 623, 118 S. Ct. at 1611. Accordingly, Petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at 623, 118 S. Ct. at 1611 (internal quotation marks and citations omitted). Assuming that Petitioner can make such a threshold showing of actual innocence, the Government's rebuttal of this showing need not be confined solely to the evidence "presented during [P]etitioner's plea colloquy," but may instead rest upon "any admissible evidence of [P]etitioner's guilt" that might be found anywhere in the record. *Bousley,* 523 U.S. at 624, 118 S. Ct. at 1611-12.

In support of his claim of actual innocence, Petitioner focuses on the statutory requirement that he must have "knowingly" provided material support or resources to a foreign terrorist organization. *See* 18 U.S.C. § 2339B(a)(1).[3] At his November 27, 2007

---

[3]Specifically, at the time of the conduct giving rise to the § 2339B charge to which Petitioner pled guilty, the statute provided:

> Whoever, within the United States or subject to the jurisdiction of the United States, knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2339B(a)(1) (2000). As discussed in this Court's ruling addressing Petitioner's

plea hearing, Petitioner initially testified as follows as to the factual basis for this and the other elements of the § 2339B offense to which he pled guilty:

> THE COURT: How do you plead to Count One of the indictment?
>
> DEFENDANT: Guilty.
>
> THE COURT: Please tell me what you did, sir?
>
> DEFENDANT: On July 13th '98, I was boarding an airplane going to Lebanon and --
>
> THE COURT: Was that here in Detroit?
>
> DEFENDANT: Yes, in Detroit. I was stopped. In my possession I had two global positioning modules, night vision goggles and [a] thermal imaging camera. These items were going to a person in Lebanon who was purchasing these items [for] Hizballah wh[ich] was designated as a foreign terrorist organization at the time.
>
> THE COURT: Did you know at the time that what you were doing was illegal?
>
> DEFENDANT: I know it was sending these items to Hizballah, Your Honor.
>
> THE COURT: Okay. Was [it] illegal?
>
> DEFENDANT: I knew it was wrong.
>
> THE COURT: Did you know Hizballah was either at the time a designated foreign terrorist organization or had engaged in acts of terrorism?
>
> DEFENDANT: Presumably yes, Your Honor.

---

various constitutional challenges to § 2339B, the statute was amended in 2004 to specify that the knowledge required to convict an individual of violating § 2339B is "knowledge that the organization is a designated terrorist organization . . . , that the organization has engaged or engages in terrorist activity . . . , or that the organization has engaged or engages in terrorism." *See United States v. Assi,* 414 F. Supp.2d 707, 720 n.8 (E.D. Mich. 2006) (quoting 18 U.S.C. § 2339B(a)(1) (2005)).

(11/27/2007 Plea Hearing Tr. at 37-38.)

When counsel for the Government expressed concern that Petitioner's use of the word "presumably" was "equivocal" and asked for clarification, (*id.* at 39), the Court questioned Petitioner further as to his knowledge of Hizballah's activities:

> THE COURT: Let's break the question down. Did you know Hizballah had been designated as a foreign terrorist organization?
>
> DEFENDANT: I'm sorry?
>
> THE COURT: Did you know Hizballah had been designated as a foreign terrorist organization?
>
> DEFENDANT: At the time, no, Your Honor.
>
> THE COURT: Did you know that Hizballah had engaged in what had been referred to as terrorist activities?
>
> DEFENDANT: I read about it. Yes, Your Honor.

(*Id.* at 39-40.) With this additional testimony, counsel for the Government expressed his satisfaction that "[i]f [Petitioner] had read about it then he knew," and the Court also found that "by [his] voluntary testimony," Petitioner had "made out all the elements of the crime" to which he pled guilty. (*Id.* at 40.)

In proclaiming his actual innocence of the § 2339B offense to which he pled guilty, Petitioner argues that his testimony that he had "read about" Hizballah's terrorist activities provides an insufficient basis for concluding that he "knowingly" provided material support or resources to a foreign terrorist organization within the meaning of § 2339B(a)(1). In Petitioner's view, a "private sector" reporter's reference in a newspaper

article to activities linked to Hizballah fails to supply an adequate evidentiary foundation upon which a reasonable juror could conclude that Petitioner had the requisite knowledge that Hizballah had engaged in terrorist activities. (*See* Petitioner's § 2255 Motion at 10, 12.) Yet, Petitioner cites no authority for the proposition that the "knowledge" called for under § 2339B(a)(1) must derive solely from a defendant's direct exposure to or first-hand observation of the activities conducted by a group designated as a foreign terrorist organization. Rather, it is enough under the statute that a defendant has acquired "knowledge," through whatever means, that a specified organization has engaged in terrorist activities, *see Assi,* 414 F. Supp.2d at 724 & n.10, and Petitioner expressly acknowledged at his plea hearing that he possessed such knowledge as to terrorist activities engaged in by Hizballah.

In any event, the Government has identified other evidence in the record that defeats Petitioner's claim of actual innocence as to the "knowledge" element of his § 2339B offense. First, the Rule 11 plea agreement signed by Petitioner states that he "knew that what he was doing was illegal," and that "[a]t the time [Petitioner] attempted to deliver the items, he knew that Hizballah was a designated foreign terrorist organization." (Rule 11 Plea Agreement at 1(C).)

Next, the Government points to evidence demonstrating Petitioner's more detailed knowledge of Hizballah's terrorist activities. Specifically, at a June 23, 2008 evidentiary hearing conducted for the purpose of deciding on the applicability of § 3A1.4 of the Sentencing Guidelines to the determination of Petitioner's advisory sentencing range, FBI

8

Special Agent Joseph Testani testified regarding his meetings with Petitioner on two occasions in July of 1998, shortly after Petitioner had been detained at the Detroit airport with global positioning satellite modules, night vision goggles, and a thermal imaging camera in his luggage. In the course of this testimony, Special Agent Testani recounted a conversation he had with Petitioner concerning Hizballah's activities:

> Q: Going back to Hizballah. Did you have further discussions with Mr. Assi about Hizballah's history up to that point?
>
> A: Yes, I did.
>
> Q: What did he tell you?
>
> A: He — we had talked about Hizballah's struggle and how they occasionally had attacked America or American interests and how they'd also attacked civilian targets outside of Lebanon.
>
> Q: And what did Mr. Assi say about that?
>
> A: He disagreed with that. He thought that it was wrong that Hizballah had done that, but he thought that they had changed their tactics, were getting away from attacking civilian targets.
>
> * * * *
>
> THE COURT: Could I asked you to be — in your recollection of what he said concerning Hizballah and its — really sort of compound question that [Assistant U.S. Attorney] Mr. Cares asked. One having to do with Hizballah's historical attacks against the United States. And, secondly, Hizballah's attacks against civilians. Did he distinguish between those?
>
> A: I believe he did, yes.
>
> THE COURT: Could you be a little more definitive in terms of what he said.
>
> A: Your Honor, we had discussed the attacks against American interests. He thought that that was wrong and that Hizballah had made

9

some mistakes in doing that. And we also discussed, I believe, some attacks on civilian targets in South America. He thought that was wrong.

THE COURT: So he thought it was wrong both to attack American interests and to attack civilian targets?

A: I believe he said that Hizballah had made mistakes by doing that.

\* \* \* \*

Q: Okay. Did you talk with Mr. Assi about certain specific episodes, terrorism acts, if you will, alleged to have been committed by Hizballah?

A: Yes.

Q: And would you tell the Court about that.

A: We discussed the attacks that occurred against American interests by Hizballah to include the 1983 Marine Corps barracks attack, the U.S. Embassy attacks, some of the kidnappings.

\* \* \* \*

Q: Who was it that brought up these specific episodes or these specific alleged terrorist acts, you or Mr. Assi?

A: I did.

Q: How did that come about?

A: I was asking Mr. Assi — after we had confirmed he had procured these items in giving them to Hizballah, knowing that they were going to Hizballah, I tried to discern what his feelings were on the group and some of the attacks they had . . . committed. We were talking about those attacks.

\* \* \* \*

Q: What, if anything, did Mr. Assi say when you started talking about specific incidents?

A: Again, he thought that these were mistakes made by Hizballah early

on and that they had become more of a political organization. (6/23/2008 Sentencing Hearing Tr. at 32-38.)  Under this record, Petitioner has failed to demonstrate his actual innocence of the § 2339B offense to which he pled guilty, such that he could overcome his procedural default of his present challenge to his guilty plea.

Even if Petitioner had preserved this challenge by pursuing it on direct appeal, it readily follows from the foregoing discussion that Petitioner's attack on his guilty plea is lacking in merit.  First, Petitioner seemingly suggests that he cannot have acted with the requisite scienter to sustain his conviction under § 2339B, where his claimed purpose in providing material support to Hizballah was not to further the unlawful aims of that organization, but rather to assist that organization in its purportedly legitimate effort to defend Lebanon against an incursion by Israeli armed forces.  (*See* Petitioner's § 2255 Motion at 10-14.)  In a pretrial ruling, however, this Court expressly rejected Petitioner's contention that to survive constitutional scrutiny, § 2339B must be read as demanding a showing of specific intent to further the unlawful objectives of a foreign terrorist organization.  *See Assi,* 414 F. Supp.2d at 719-24.  Petitioner did not seek review of this ruling by the Court of Appeals, and the Court is not aware of any developments in the law that would warrant reconsideration of its pretrial decision, particularly in the context of a collateral attack upon a guilty plea.[4]

---

[4]To the contrary, the Supreme Court has more recently upheld § 2339B against constitutional challenges similar to those advanced by Petitioner in his pretrial motion.  *See Holder v. Humanitarian Law Project,* 561 U.S. 1, 18-39, 130 S. Ct. 2705, 2718-30 (2010).  To be sure, this Supreme Court ruling addresses a revised version of § 2339B that expressly defines the knowledge that an individual must possess in order to violate the statute, *see Humanitarian*

This leaves only Petitioner's contention that his plea colloquy failed to establish even the more lenient standard of "knowing" conduct adopted by the Court at the time of Petitioner's plea hearing — namely, that Petitioner must have known either that Hizballah had been designated as a foreign terrorist organization or that it had engaged in terrorist activities. As explained above with regard to Petitioner's claim of actual innocence, however, the Court is confident that this element of a § 2339B offense was sufficiently established through Petitioner's statements at his plea hearing, and other evidence in the record confirms that Petitioner acted with the requisite knowledge demanded under § 2339B(a)(1). Accordingly, the Court finds both that Petitioner has procedurally defaulted his present challenge to his guilty plea, and that this challenge has no merit.

**B.    The Court Adheres to Its Pretrial Ruling that § 2339B Is Not Void for Vagueness, Particularly Since Petitioner Failed to Challenge This Ruling on Direct Appeal.**

As his next challenge to his conviction, Petitioner argues that § 2339B is

---

*Law Project,* 561 U.S. at 16-18, 130 S. Ct. at 2717-18, while this Court's pretrial decision rested upon an earlier version of the statute that lacked this explication of the "knowledge" element of a § 2339B offense, *see Assi,* 414 F. Supp.2d at 712, 720 n.8 (quoting the version of the statute that applies in this case and noting that the statute had since been amended). Yet, the revised statute under consideration in *Humanitarian Law Project* did not effect a substantive change to the element of scienter addressed by this Court in its pretrial ruling, but instead comported with the rulings of this Court and others that § 2339B, whether before or after its amendment, does not demand a showing of specific intent to further the unlawful aims of a foreign terrorist organization. *See United States v. Taleb-Jedi,* 566 F. Supp.2d 157, 175 n.17 (E.D.N.Y. 2008) (explaining that the amended § 2339B reflects Congress's "implicit[] reject[ion]" of a construction of the statute as "requiring a specific intent to further an organization's terrorist activities").

unconstitutionally vague because it fails to provide fair warning of the conduct it prohibits. Yet, Petitioner raised this very same vagueness challenge in a pretrial motion, and the Court held that § 2339B "neither reaches a substantial amount of constitutionally protected conduct nor is impermissibly vague as applied here." *Assi,* 414 F. Supp.2d at 717-19; *see also Humanitarian Law Project,* 561 U.S. at 18-25, 130 S. Ct. at 2718-2722 (similarly concluding that the amended version of § 2339B is not impermissibly vague). Moreover, because Petitioner failed to raise this issue on direct appeal, he has procedurally defaulted his vagueness challenge and may not pursue it on collateral review. *See Bousley,* 523 U.S. at 621, 118 S. Ct. at 1610. Although Petitioner may overcome this procedural default by demonstrating either cause and prejudice or that he is actually innocent, *see Bousley,* 523 U.S. at 622, 118 S. Ct. at 1611, he does not even attempt to establish cause for his failure to raise the issue of vagueness on direct appeal, and the Court explained earlier that Petitioner has failed to show that he is actually innocent of the § 2339B offense to which he pled guilty. It follows that Petitioner is procedurally barred from pursuing his claim of vagueness on collateral review.

C.     **The "Law of the Case" Doctrine Precludes the Court from Considering Petitioner's Challenge to the Application of § 3A1.4 of the Sentencing Guidelines.**

The third claim advanced in Petitioner's present § 2255 motion is that the Court erred in applying § 3A1.4 of the Sentencing Guidelines as part of its computation of Petitioner's advisory sentencing range. This challenge to the applicability of § 3A1.4, however, was both litigated before this Court, *see Assi,* 586 F. Supp.2d 841, and raised on

direct appeal to the Sixth Circuit following Petitioner's guilty plea and sentencing, *see Assi,* 428 F. App'x at 571. Most significantly for present purposes, the Sixth Circuit affirmed this Court's decision to apply § 3A1.4 in determining Petitioner's sentencing range under the Guidelines, expressly addressing (and rejecting) each of the arguments raised by Petitioner in his present motion. *See Assi,* 428 F. App'x at 572-77.

The Sixth Circuit has held that "[w]here an issue has been decided on direct appeal from a conviction, it cannot be relitigated again [i]n a § 2255 motion." *Turner v. United States,* No. 91-5546, 1991 WL 253195, at *1 (6th Cir. Nov. 29, 1991). Rather, "[t]he decision on the direct appeal is the law of the case, absent the intervention of 'new law' since the trial and appeal." *Turner,* 1991 WL 253195, at *1; *see also Bender v. United States,* No. 07-3909, 372 F. App'x 638, 641 (6th Cir. April 13, 2010) (explaining that "[u]nder the law of the case doctrine, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation" (internal quotation marks and citation omitted)). Consequently, the "law of the case" doctrine defeats Petitioner's attempt to relitigate the applicability of § 3A1.4 in his present motion.

**D.     Petitioner Has Failed to Identify a Proper Basis for Recusal.**

Finally, Petitioner contends that his conviction is invalid due to the failure of the undersigned District Judge to recuse himself based on his "religious affiliation[]." (Petitioner's § 2255 Motion at 3-4; *see also* Petitioner's Affidavit of Bias at 1 (asserting that the "appearance of fairness" is lacking in these proceedings because of the "religious affiliation[]" of the presiding judge).) Petitioner further suggests that his present motion

should be referred to and decided by a different District Judge, presumably one with a different religious affiliation. As discussed briefly below, Petitioner demand for recusal is utterly without merit, as it rests solely on a false and baseless attack upon this Court's fairness, impartiality, and faithfulness to its judicial oath throughout these proceedings.

Petitioner's request for recusal is governed by 28 U.S.C. § 455, which provides in pertinent part that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or "[w]here he has a personal bias or prejudice concerning a party" to the proceeding. 28 U.S.C. §§ 455(a), (b)(1). The Sixth Circuit has explained that "a district judge must recuse himself where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Buell v. Mitchell,* 274 F.3d 337, 345 (6th Cir. 2001) (internal quotation marks and citation omitted). It bears emphasis that "[t]his standard is *objective* and is not based on the subjective view of a party." *Wheeler v. Southland Corp.,* 875 F.2d 1246, 1251 (6th Cir. 1989) (internal quotation marks and citation omitted); *see also United States v. El-Gabrowny,* 844 F. Supp. 955, 961 (S.D.N.Y. 1994) ("[T]o say that § 455(a) requires concern for appearances is not to say that it requires concern for mirages."). Moreover, "[t]he burden is not on the judge to prove that he is impartial." *Scott v. Metropolitan Health Corp.,* No. 05-1948, 234 F. App'x 341, 352 (6th Cir. April 3, 2007). Rather, "a judge is presumed to be impartial, and the party seeking disqualification bears the substantial burden of proving otherwise." *Scott,* 234 F. App'x at 352 (internal quotation

15

marks and citation omitted).

Petitioner has not remotely met this substantial burden here. He suggests that because the undersigned judge "is or was a Jew" and hence is an "ally of Israel and its government," the Court would be viewed by a reasonable person as biased against a defendant who is "accused of providing material support to defenders of Lebanon while it is under attack from Israel." (Petitioner's § 2255 Motion at 31-32.) Yet, Petitioner points to nothing whatsoever in the record that would reflect this Court's views as to any past or present conflict in Lebanon, whether involving Hizballah, Israeli troops, or other Lebanese or outside forces. Simply stated, nothing in this case has called for the Court to weigh in on this subject, and the Court has not done so.

Absent any such actual evidence of the Court's bias, prejudice, or preconceived notions of any sort concerning the international conflicts and affairs referenced in Petitioner's motion, Petitioner is left to appeal solely to the religious affiliation of the undersigned District Judge, surmising that this would necessarily lead to bias in the Court's rulings in this case. The courts have uniformly recognized, however, that a judge's religious affiliation or beliefs, standing alone, cannot provide a basis for recusal. *See, e.g., In re McCarthey,* 368 F.3d 1266, 1270 (10th Cir. 2004); *Bryce v. Episcopal Church in the Diocese of Colorado,* 289 F.3d 648, 660 (10th Cir. 2002); *United States v. Odeh,* No. 13-20772, 2014 WL 3767808, at *2-*6 (E.D. Mich. July 31, 2014); *United States v. Nelson,* No. CR-94-823, 2010 WL 2629742, at *2-*4 (E.D.N.Y. June 28, 2010); *El-Gabrowny,* 844 F. Supp. at 961-62. Similarly, "[c]ourts have repeatedly held that

matters such as race or ethnicity are improper bases for challenging a judge's impartiality." *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.,* 138 F.3d 33, 37 (2d Cir. 1998) (citing cases). Particularly in light of the oath taken by each judicial officer, including the undersigned, to support the Constitution and "faithfully and impartially discharge and perform" the duties of his or her office, *see* U.S. Const. art. VI, cl. 3; 28 U.S.C. § 453, "[a] suggestion that a judge cannot administer the law fairly because of the judge's racial and ethnic heritage is extremely serious and should not be made without a factual foundation going well beyond the judge's membership in a particular racial or ethic group." *MacDraw,* 138 F.3d at 37; *see also Odeh,* 2014 WL 3767808, at *5-*6 (observing that the demand for recusal in that case, which rested upon the presiding judge's "relationship to [his] faith and [his] heritage through [his] activity on behalf of the Detroit Jewish Federation," "strikes at the very heart of a Federal Judge's pledge to administer impartial justice, and does so with careless and rank speculation").[5]

---

[5]Notably, the same constitutional provision that requires judicial officers to take an oath to support the Constitution provides that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." U.S. Const. art. VI, cl. 3. In light of this prohibition against religious tests to hold public office, the courts have observed that it would be highly problematic to inquire into a judge's religious affiliation or beliefs as a basis for disqualifying the judge from presiding over a particular case. *See, e.g., In re McCarthey,* 368 F.3d at 1270; *Nelson,* 2010 WL 2629742, at *3. As eloquently stated some years ago by District Judge Leon Higginbotham, in a case in which his recusal was sought on the ground that he had been active in the advancement of black civil rights and thus could not preside impartially over a case involving claims of race discrimination brought by African-American plaintiffs, "I would think less of [my colleagues in the Judiciary] if they felt that they had to repudiate their heritage in order to be impartial judges." *Commonwealth of Pennsylvania v. Local Union 542, Int'l Union of Operating Engineers,* 388 F. Supp. 155, 180 (E.D. Pa. 1974); *see also Odeh,* 2014 WL 3767808, at *5 ("Like every one of my colleagues on the bench, I have a history and a heritage, but neither interferes with my ability to administer impartial justice to

Needless to say, Petitioner has supplied no such factual foundation here that would call into question this Court's allegiance to its oath to administer fair and impartial justice as it has presided over this case. Rather, Petitioner first trades in broad, unfounded stereotypes and a simplistic us-against-them perspective as fuel for his speculation that religious affiliation alone might render the Court incapable of evenhanded justice under the facts presented here; Petitioner explains, for example, that the Court's "associates" comprised an "invading force" in Lebanon, and that Petitioner's "countrymen and [the undersigned judge's] congregation have been warring literally for decades." (Petitioner's § 2255 Motion at 31-32.) Petitioner then points to a series of rulings in this case that he evidently views as "exemplif[ying]" the Court's "bias and partiality" arising from the undersigned judge's religious affiliation. (*Id.* at 32-33.)

The law is clear, however, that "judicial rulings alone almost never constitute a valid basis for" recusal, because "[i]n and of themselves, (*i.e.,* apart from the surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source[,] and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Liteky v. United States,* 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994). Apart from Petitioner's evident dissatisfaction with the Court's rulings — a dissatisfaction that "[a]lmost invariably" provides "proper grounds for appeal, not for recusal," *Liteky,* 510

---

[the defendant] or to the Government.").

U.S. at 555, 114 S. Ct. at 1157 — he has not identified anything in the challenged decisions or their surrounding circumstances that would suggest the Court's antagonism toward him, bias, or improper reliance on extrajudicial sources or beliefs that "would make fair judgment impossible." *Liteky,* 510 U.S. at 555, 114 S. Ct. at 1157. Thus, the Court rejects Petitioner's challenge to his conviction as the product of judicial bias or as undermined by the appearance of such bias, and likewise denies Petitioner's request that the Court recuse itself from deciding the present motion.

### III.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Petitioner's motion under 28 U.S.C. § 2255 to vacate his conviction (docket #182) is DENIED. IT IS FURTHER ORDERED that Petitioner's "affidavit of bias" (docket #181), which the Court construes as a motion for recusal, also is DENIED.

Finally, in the event that Petitioner might seek to appeal any of the Court's rulings in the present opinion and order, the Court finds that a certificate of appealability should be DENIED as to each of the claims asserted in Petitioner's § 2255 motion and accompanying motion for recusal, for lack of a substantial showing of the denial of a constitutional right.

                                                s/Gerald E. Rosen  
                                                Chief Judge, United States District Court

Dated:  June 12, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 12, 2015, by electronic and/or ordinary mail.

                                    s/Julie Owens
                                    Case Manager, (313) 234-5135